By the time this case got to trial, there had already been some significant error injected into the case when the district judge granted Harris County's third motion for summary judgment, in particular with respect to the salary basis element of its white collar exemptions. The district court seemed to assign the burden to prove that particular element of an affirmative defense to Lt. Moreau and the other plaintiffs, and also assumed that because Harris County was a public employer, there were really no guardrails on the salary basis element of the exemption. At trial, additional issues arose, and the issues arising from the trial primarily concerned whether Harris County was permitted to deny overtime protections under the FLSA without proving its exemption status in a legally reviewable way. As this court's precedent makes clear, the Supreme Court's precedent makes clear, in fact every circuit to address this issue has said, the ultimate determination whether an employee is exempt is a legal question that's predicated on certain factual findings that are the responsibility of a jury. It's important because obviously legal determinations by a court are subject to a de novo review, and you have obviously in a jury trial situation a large amount of deference to the factual findings of the jury. In this case though, the verdict form does not reveal how and whether the jury resolved the factual predicate that Harris County was required to prove to establish its exemption defenses. The instruction said to them the pattern. There was no dispute with the instruction. No one said to that point, hey judge, that could lead to an inconsistent verdict. We wanted the verdict form to be submitted to the jury differently and asked that they be a granulated submission. Right, but that's factual. That wasn't as to this issue of they've got to be standalone, they can't overlap, to my knowledge. Those requests wouldn't have resolved what you're now saying is a legal impossibility. Well, I think so, and I'll point out two things. You think what? That you did ask that the jury instructions be modified so they couldn't come back with two primaries? Did you ever ask that in the instructions, or did everyone just go along with? Well, we used the definition of primary that's in the regulation. It says main, principal, and most important, duty. And by the time it became clear to us on the back end after the jury returned the verdict and answered yes to both of those questions, we said, judge, before you discharge the jury, please tell them to go back there and deliberate on this particular issue. Tell them you can't have two primaries. Is there any circuit court that has ever said you can't be both? And I'm not talking about the combination exemption. Is there any circuit court that's actually ever said the legal proposition you just gave them? It's got to be one or the other as primary, that's it, stand alone. Has any circuit court said that? I'm aware of a bunch of district court cases. I know, but you primarily cited in the new trial order, and then you cited it again in your brief here, this district court from Ohio saying in Squigard, right? Right. Okay, but that was a very different situation. That was the outside sales exemption. Right. Well, it's very easy for my brain to understand that's incompatible with internal administration. Is there any court that's ever said not outside sales exemption, right? Right. Do you have any authority on that proposition? Any appellate court. Yeah, well, or even a district court. The two Ohio cases were dealing with the same sales exemption. Well, there was a case from Judge Harmon out of the Southern District of Texas. And that's on point? That has nothing to do with sales?  I believe so. Southern District of Texas, Judge Harmon, I can get you. No, if you cite it, that's good. So there's no circuit authority, and I guess I did have difficulty thinking why the combination exemption is relevant. I can see that if you don't have as a primary duty either one. Right. Then there's this theory that you can cobble them both together. But that wasn't what Harris County was saying here ever. Right? They're saying that they qualify under both. Well, they did say that. However, in their brief, all of the legal authority on which they rely is the combination exemption regulations for the proposition, the flip side of your question, for the proposition that you can be both simultaneously exempt and standalone administrative and executive exemptions. Adding one to the other to get primary. Right. But I'm sorry, I don't understand your— I guess I didn't see in the proof given or in the arguments, they're ever saying, hey, these people are sort of close on each. But if you put them together, then they're exempt. Instead, they're saying, no, they qualify under both. Well, that would require the court to invest new meaning in the word primary. Yeah, but no court hasn't. No court—you've just agreed with me except for maybe one case that I—my apologies, I don't know this. I was focusing on the Ohio cases. Right. But no court has said this exclusivity principle you're urging. I think it's because the word primary has always meant the word primary. I mean, if we're going to redefine the term, then we need some appellate law on the issue. But if primary means what it's always understood to mean, then it's one or the other. And again, to my point, two points, the combination exemption wouldn't exist if that were a reasonable interpretation of the exemptions. I mean, there would be no need for it. Well, but there would be if you aren't primary under either and you've got to cobble them together. That would answer that situation, which is not what I think Harris County is saying as to these lieutenants. Well, again, in their brief, the authority on which they rely for the proposition that you can be simultaneously exempt is exclusively the combination exemption regulations. Right, but if you didn't ask for an instruction on that, we've got to find that to be clear error. And that's why I kept pressing, what circuit's ever said these are stand-alone exclusive? And no circuit has. Well, again, it wasn't clear to us until after they reached their decision. I'm just testing, and I'll be testing them. But why wouldn't it be clear? The whole theory was these guys don't meet either. And then both sides say, OK, we'll take the pattern instructions. Admittedly, there was the granularity request, but I don't see that it pertains to this issue. Then you lose, and you say, oh, well, we'd like them to go deliberate about more, one or the other. But did you give authority, any circuit authority that any courts ever required that? When you asked for more deliberation, did you give any authority accompanying that? That, oh, you can't have it be. We gave authority for the broader principle of imagery.  Inconsistent verdict that the correct thing to do would be to go send them back to deliberate. We gave authority for that proposition. But specifically on this narrow exemption issue, two competing primary duties, no. Yeah, it's interesting. So the regulation, it says what it says, and obviously we try to construe that. Backing up just a minute and looking at policy, what would be the possible policy justification for saying you can't be some or both? The policy justification, Judge, is words should mean they should take on their ordinary meaning in primary insofar as I remember from school has always meant the single most important duty, the one. You can't have two primary duties. As far as a proposition of logic goes, that's about as clear as they come, to me anyway. And I think, too, with respect to the duties, I'd like to go back to kind of the first point we made about the salary basis issue. There's no evidence in the record, none, that our clients were paid on a salary basis. And I think these other issues, while they're important and we would like to see the court answer the questions, if you reach that one. You're right. That's the first issue. But the real obstacle there is this Escribano case. And I admit there's some oddities we'll ask about burden shifting. But nevertheless, our court has said you have got to point to the employer's practice of improper deductions. And if I'm right about that characterization of that opinion, where's the fact you point? Where would you point to them in the five years litigation that they ever improperly deducted? So I'm not sure that's the right question. I know, but if it is the right question, is there any record proof? There's none because the contingency, the condition that would require a deduction just never occurred because the county is so understaffed that it required these folks to work a tremendous amount of time. That means the role of time really actually never made the pay fluctuate. It was hypothetically possible, but it never in practice happened. Right, but that doesn't mean there was a guarantee. There was an expectation. Isn't that what Escribano says? No, in Escribano, that's the other Travis County case, right? I think there's the Miller versus Travis County and the Escribano. I remember, and I think we said it in a footnote, there was a stipulation that certainly in Miller there was a stipulation that the lieutenants were paid on a salary basis. And I think in Escribano it was something different. The ultimate inquiry is now just practice, whether the employer had an actual practice of making improper deductions. And the reason I'm going to push back a little bit. Yeah, do push back. When you're looking at a pay practice, I think everyone understands what a typical salary is. You get the same sum every year, regardless of the number of hours you work. On the other end of the spectrum, there's a traditional, just the traditional hourly worker. You get paid per hour. Yes. There's a whole collection of pay practices in between. And when we get something that arguably looks like a salary, but it doesn't fall neatly into either one of those kind of binary choices, we've got to resort to these tests and the regulations to figure out where it falls. Yeah. I will submit to you that in Travis County, the actual pay practice was fundamentally different. It resembled a salary on a basic level. Here, I don't even think we need to get there because it's undisputed that these folks were paid based on the hours that they worked, whether in comp time or cash. I mean, you've got like the helix situation with the day rate or these salaries where you have a minimum guarantee plus extras, but you've got to work through the guarantee issue first and then see whether or not there's any improper deductions. We don't need to do any of that because they're just hourly workers. I mean, if someone had come up here and— But they get a minimum 40. They were expected to work a minimum 40. And there's no evidence that they were ever docked for not doing that? Their comp time bank was docked. And there's a host of appellate court cases, Spradling, Kinney v. District of Columbia, Malcolm v. Martin Kearney, that say that evidence is that you're paying this person on an hourly basis. So it's not like they were guaranteed 40 hours a week. They were expected to work 40 hours a week. When they worked more than 40, the delta went into a comp time bank, and when they worked less than 40, the comp time base was deducted. But at the end of the day, you're measuring an employee's pay based on the hours that they worked as opposed to saying we are guaranteeing that even if you work 35, you're going to get paid for 40. That is fundamentally different than what happened in this case. And so I don't know that the other cases that they cite in the regulations really do much— If there's no evidence ever that they actually were docked, how is it different? How isn't that the guarantee? Because the fact that you receive the same amount of pay every week doesn't mean that you're guaranteed. There is a reasonable factual explanation for that, and that is that they always worked more than 40 hours a week or had time in the comp time bank. But that doesn't mean they were guaranteed anything as opposed to some of the other pay practices in the cases that they cite. And I just think it's fundamentally different. So, again, that was on summary judgment where the evidence on an affirmative defense where they've got to establish it beyond per adventure for them to prevail on that particular issue, which I don't think that they did. I also wanted to point out, returning to the jury instruction issue, in the Miller v. Travis County case, there was a suggestion from the county and from the magistrate judge that presided over the case. We're sticking with the pattern. No one ever does it the way you suggested. That's untrue. In Miller, they did exactly what we suggested. They broke down the exemption in the jury verdict form and said, do you find by a preponderance of the evidence that the primary duty of these lieutenants was office or non-manual work directly related to the management or general business operation of the sheriff's department? And they did that for every element of the exemption. And it allowed this court to conduct a meaningful review for the case. But here, the jury didn't make any factual findings. They found that they were exempt, which is a legal question committed to the district court in every circuit in this country. And so I think that complicates things because the legal question is subject to a de novo review. And you don't really have to pay any sort of deference to a determination of law by a jury. But in Miller, we did say the quintessential jury question would be whether people hire and fire. For the executive exemption? Yeah. And I think you found, just like in this case, what the evidence showed, that there was no evidence that they could hire and fire. In our case, the evidence at trial was undisputed, that they couldn't even meaningfully make recommendations, that they might have sat on a board just like the lieutenants in Miller. But for any number of reasons, one, that civil service laws prohibited them from making recommendations as to hiring and firing. So I welcome any other questions the court has. But I see my time is up. You've saved time for a couple. Thank you. Thank you. Mr. Hesse? Mr. Swink? Thank you. Good morning. May it please the court. I am Ryan Swink, and I represent the Appley, Harris County, Texas. This case presents a straightforward application of the Fair Labor Standards Act's exemptions for executive and administrative employees. While the appellants fall into multiple categories, they are all the same in certain ways, and those similarities are dispositive in this case. First, each and every appellant was paid on a salary basis. Second, no appellant had the primary duty of frontline law enforcement. They were not out walking a beat or taking 911 calls or supervising pretrial detainees or making arrests or issuing citations or interviewing witnesses or gathering evidence. All of those tasks were performed by the deputies and sergeants. A lieutenant and a captain's primary duty is management of the personnel and resources under his command. Additionally, every appellant that went to trial manages a permanent department or subdivision, and each and every appellant that went to trial made recommendations as to hiring, advancement, promotion, or other change in employment status which was given a particular weight. Because of these similarities, the district court correctly granted summary judgment on the salary basis issue and asked the captains and law enforcement lieutenants. And then the jury correctly found that the remaining law enforcement lieutenants were exempt under both the administrative and executive exemption. Appellants raised five issues on appeal, each of which misses the mark entirely, and we asked this court to confirm the judgment below in its entirety. As to the first issue, the salary basis question, there is no dispute that the minimum threshold was satisfied. The only issue is whether or not the compensation structure qualifies as a salary. So to prevail on that argument, appellants have to convince this court of two things. First, that Harris County did not satisfy the general salary basis rule, which Your Honor mentioned is under Escribano, requires them to show an actual improper deduction. Okay, but just stop there for a minute, because Escribano, if I remember, that was tried to verdict. Correct. Okay, but here his point is you've got a different burden arrangement. We're at the summary judgment stage, and it's your burden. And yet it seems like what you're trying to say is apply Escribano to say why didn't they point to record evidence of a practice of unlawful deductions. Correct, and I think the way this court should interpret Escribano is once the movement comes forward with sufficient evidence for the court to conclude as a matter of law that, yes, this is a salary, then the burden shifts to the non-movement to demonstrate, well, it may be a salary, but you are making improper deductions, so therefore it loses its characteristic as a salary. And I think there's some record evidence that really drives this point home, and it is found in the record of 1145 to 1232, and those are three years of pay records for the named appellant, Lieutenant Moreau. Wait, what's the record say? 1145 to 1232, and that is from the initial summary judgment motion filed early on in the case. And so I want to call this court's attention to a few pay periods related to Lieutenant Moreau. So the week of October 13, 2018, Moreau worked 32 hours, and he was paid $1,981.28. The next week he worked 35 hours and was paid $1,981.28. The next week he worked 32 hours again and was paid $1,981.28. A couple weeks later, the week of November 17, 2018, Moreau worked 56 hours and once again was compensated $1,981.28. As the Supreme Court pointed out in Helix, a salary connotes a steady stream of fixed income, and that's exactly what this record demonstrates here, a steady stream of fixed income. Appellants have brought up this idea that there has to be some sort of guarantee for it to be a salary, and they get that point from the Sixth Circuit's decision in Hughes. And even Hughes acknowledged that in certain circumstances, evidence showing a consistent pattern week to week of receiving the same pay is enough for the court to conclude as a matter of law. So it doesn't have to be in the contract? There doesn't have to be a formal contract. And Hughes says that? Hughes says there has to be a guarantee. But Hughes also says that the guarantee can be proven through practice. And I think it's important to look at 541-603, which talks about the key factor being the intent of the employer, and that the intent of the employer is demonstrated through the actual practice. So whether or not there is, in fact, a practice of improper deductions. And I think we also have to look back at 541-602A. So how does this Harris County comp time? You said in a footnote maybe that it's like paid leave in the private sector. So essentially it's like— What's going on? It's like flex time, Your Honor. So imagine for an employee, the expectation for all exempt employees is you're going to work 40 hours a week. Obviously, not every human can work 40 hours every week. So it creates a flexible situation. I work 45 hours this week. I can work 35 the next week. So it creates this overall average of—the goal being an overall average of 40 hours a week. And that is necessary to be consistent with the principles of public accountability because Harris County is ultimately accountable to the taxpayers. And the Harris County Commissioner's Court, which is the governing body for the county, has decided that to be consistent with those principles— And not a single plaintiff ever got docked? There is no record that—there is no evidence in the record that any plaintiff ever got docked and that such a docking was improper. And even if there were evidence of a docking, then that would turn to the question of whether or not the public employer safe harbor rule applies. And under that safe harbor, there are certain deductions that public employers can make for partial day absences as so long as it's issued pursuant to a policy of public accountability. And I want to kind of touch on that just a little bit. Did the district court make a finding on that? The district court found that in the alternative, even if there were—it didn't meet the traditional salary basis, that yes, the public employer safe harbor rule applied. And so my friends on the other side mentioned Spradling versus the City of Tulsa. And they cite that in their brief kind of for this idea that there has to be a connection between this principle of public accountability and the actual policy. And they also say that Spradling stands for the position that there has to be some legal impediment to Harris County not implementing a docked time policy. And that's not what Spradling says. Spradling involved an informal policy within the City of Tulsa where certain managers would make certain deductions. And then ultimately when they were sued on it, they tried to claim, oh, well, the state supreme court says you can't make gifts of public funds. So that's what we're doing is we're preventing gifts of public funds. But the evidence showed that wasn't what they were doing because it wasn't a consistent policy across the board. Here we have record evidence at 2123, which is the actual voting record of the commissioner's court where they approved this policy. And on the face of the policy itself, it says it is being implemented pursuant to principles of public accountability. If that is not sufficient to meet that element of that test, no evidence is. Because the policy itself, it is the legislative intent statement at the beginning of every regulation. I do want to also turn back to one point on the question of guarantee. And I think we have to look at the actual language of the statute itself or the regulation itself. So 602A doesn't actually use the word guarantee. 604 does, and 604 has that minimum guarantee plus extras. And then if you actually go back in time to pre-2004 to the old version of the salary basis rule, it used to read under his employment agreement that the employee regularly receives. So the DOL, the Department of Labor, removed that requirement entirely. And I think that's clear evidence that appellant's contention that there has to be a guarantee is not supported by the regulation. Appellants also brought up one other point. Actually, it's on the next. So if there are no other questions on the salary basis, I'll move on to the next issue. So the next issue that appellants raise is the district court's conclusion at summary judgment that criminal justice lieutenants are exempt administrative employees. And so it's important to note that appellants have only challenged the second element of the test on them. So that would be that their primary duty is directly related to management or general business operations. The record is pretty clear that that is the case. So at 2044, you have the declaration of Chief Diaz, who says that his primary duty or the criminal justice lieutenant's primary duty is to ensure that sergeants, deputies, and civilian staff who report to them are doing their job correctly and efficiently. That evidence is supported by the appellant Templeton's testimony at 2479, Bryant's testimony at 1972, Lee's testimony at 2000, and Crose's testimony at 1907. So there really is no factual dispute that the primary duty of the criminal justice lieutenant is personnel management. Appellants tried to make this argument that they were actually frontline law enforcement officers, and the record evidence completely dissuades that, and the district court clearly cites to it. But they did some. They did some, absolutely, but not enough that it would be their primary duty, right? And not enough that it would rise to the level to make them a working supervisor. So for those reasons, the district court's decision as to the criminal justice lieutenants should be affirmed. So the third issue that came up was the question of the jury instruction. I know Your Honor has some questions about that. And I think before we reach the specific questions, we have to determine whether or not the record was actually preserved. So all that appellants said during the charge conference was, we would like a Rule 49 special interrogatory. And a Rule 49 special interrogatory is a determination of fact. And it seems like today appellants have argued that what they meant by that was the proposed jury instruction that we submitted in advance. But the proposed jury instruction or jury questions that they submitted in advance did not ask questions of fact. They asked the jury to apply the facts to the law and make a determination, admittedly, in a more odious way, answer it multiple times. And so therefore, the issue was not preserved. And appellants have not argued that they can meet the clear error standard. In your reply brief, did you say that this issue wasn't preserved? I thought you accepted the abuse of discretion standard review. So we raised the issue of it being preserved in response to their post-trial motion. They did not address it. We raised the issue of it not being preserved in our primary brief, and it did not get addressed. So they have just assumed that it has been preserved. OK, so your position on this inconsistency argument is we would only assess for plain error? Correct, Your Honor. But even if this court were to say that it was preserved, there still is not an abuse of discretion. Because in order to prove an abuse of discretion— I didn't remember that you had actually asked for plain error review. But it's in the brief? Yes, Your Honor. So we pointed out that it had not been preserved and that plain error applied. And then we said even if plain error doesn't apply, we went into the analysis that they can't even meet the abuse of discretion. Is there any FLSA case where the jury is allowed to consider multiple exemptions, but then there is no limiting instruction as to you have to find one to be primary? Can you think of any case that's actually said that? I don't necessarily know if it's jury cases, but I know there are at least two Fifth Circuit cases where this court has held employees were exempt under both the executive and administrative exemption. And those cases are— Has held. So the specific finding is both count, even without any designation, which is primary. Correct. And that would be Cobb v. Finest Food. I didn't see it in Cobb, but can you read—it looks like you have it right there. Yes. And let me—I can give you the cite to it if you'd like. Not the cite. Just go ahead and read where we said people can be exempt on both as primary. The court did not make that specific holding, but the court held that they meet the executive and they meet the administrative exemption. So it's kind of implicit. Even if the issue wasn't raised? I don't think this court needs to go any further than the plain language of the regulation, which states—and this is in 541-201B. So 541-201B is the list of functional areas for the administrative exemption, which meet the primary duty test. And the last sentence in that regulation says, Some of these activities may be performed by employees who would also qualify for another exemption. So also qualify, not could qualify in the alternative or it would be mixed up. And I think if you just think about it at a high level, what is listed in 201B is things like human resources. So the president of the human resources department is going to satisfy the human resources primary duty, probably also going to satisfy the management duty under the executive exemption. And specifically within 201B, it lists personnel management. So the primary duty of personnel management, which is what is required for the executive exemption, is listed as a functional area. So I think it's hard to ignore the fact that it uses the exact same language. So the combination exemption, you didn't want it ever. It's irrelevant to this. Is that fair? Correct, Your Honor. Yes. And I would like to just point out one thing from appellant's counsel. He mentioned a southern district of Texas case, and I believe that is the Reyes case. And that was a combination exemption case. So it's not on point. Yes. And was I right about Swigart, the other Ohio case? Absolutely, Your Honor. The combination exemption might come in for a situation like that. So you could be a sales representative who I'm outside sales half the time, and the other half the time I'm managing the sales staff. That would be when it would come in, when they're diametrically opposed. But that's not what we have here. We have management, which the plain language of the regulation satisfies both of them. So turning back to, if there are no other questions about the jury instruction, I'm going to move on to the next issue, which is the sufficiency of the evidence. So appellant's referenced Miller v. Travis County, and I think that there's a point from Miller v. Travis County, which is directly on point, and I'll quote it to you. This court stated, there was evidence on both sides, and the jury picked the winner. That is the jury's role, and that's exactly what happened here. Judge Smith wrote that opinion? Judge Smith did write that opinion, yes. So there was certainly evidence that the law enforcement lieutenant spent some time in the office, and there was really no dispute that that office work was going to be administrative. There was some dispute as to whether or not it was 50%, more in the office, more in the field. So that turns to, what do lieutenants do when they're in the field? And Chief Diaz kind of summed it up really, really succinctly. Sergeants and deputies take calls, meaning they show up. You call 911, they're the first one who's there. They're taking your statement. They're investigating. They're looking at the facts. They're writing police reports. They're communicating to the district attorney, all of the things you think of in terms of traditional law enforcement. However, the evidence showed that lieutenants make scenes. So they make scenes. They're there to supervise. Make sure that their subordinates are doing what they're supposed to do. Give them advice. Give them tips. Train them up. If they see something wrong, they call it out. Lieutenant Moreau testified, for the most part, he would just sit in his car and watch. That is not frontline law enforcement. That is management. And that's precisely what this court found in Smith v. City of Jackson. So that case was the supervision of firefighting efforts. And so it was the battalion commanders who would show up. They'd be in the command center. They'd be directing the firefighters' response. This court in Smith v. Jackson held that that is exempt both management and executive. I think the actual quote from Smith is, it's quintessential executive and administrative work. So I think in Smith, there may be that language that you were looking for, Your Honor, where it combines the two exemptions under one set of duties. The Fourth Circuit reached the same conclusion in Edmonds v. The City of Chesapeake. As to the executive exemption, the jury heard that lieutenants' primary duty, or one of them, The key issue or determination in that prong of the exemption is the permanent status or function, and that's directly from the regulation. And the permanentness is so important. I think if you look at the Second Circuit's decision in Reyes, it was within a factory. There were multiple groups in a shift that were all doing the same thing. The Second Circuit said that is still a permanent, or that still meets the customarily recognized department because it was permanent in nature. And so here, Chief Diaz testified as to every lieutenant and every one of their units was permanent. The jury also heard evidence that lieutenants make recommendations as hiring, firing, promotion, and transfers, and that those are given particular weight. There were multiple examples of it, and ultimately, the jury found that it was compelling. And I think perhaps one of the reasons the jury found that that evidence was so compelling is because the appellants took this hard line, we have no involvement whatsoever, and then that was directly rebutted by specific examples of them actually being involved in the hiring, firing, not firing, hiring and transfer activity. And to the extent there's going to be an argument on rebuttal that some of the activities, such as transfers, don't meet this examination, or don't meet that element, appellants waived that. So the jury came back with their first note asking whether or not transfers meet it, and the judge sent a note back saying something along the lines of, that's for you to determine. Appellants didn't object to that, so they waived any contention that it's not a pure jury question as to whether or not internal transfers satisfy that prong of the test. I do want to make one final point, just turning back to the salary basis. Harris County is not alone in its use of the comp time system for exempt employees. In fact, Veronica Weinberger testified in her deposition that most public employers use a similar system. If this court agrees with the appellants and concludes that the comp time system is not compliant with the public employer safe harbor, it poses a question, what do public employers replace it with? I think ultimately they replace it with a fixed vacation time and then public safe harbor deduction, which will ultimately result in two things. One, employees who work more won't get more time off than their co-workers who don't work as much. And two, it will result in actual using of the dock time procedures. So ultimately we'll have a negative impact on employees. There is nothing inconsistent with the FLSA or the concept of a salary that an employee who works more should get more time off. Therefore, Harris County respectfully requests this court affirm the lower court's decision in all regards. Thank you. Thank you, Mr. Swink. Mr. Hesse? Mr. Bowe? Yes, Your Honor. I'd like to pick up on the salary basis issue where he left off, and I want to specifically mention the Hughes case. It's important to remember where that case was procedurally. In that case, the district court had determined as a matter of law that the fact that the employees regularly receive the same amount of pay established the salary basis rule. The circuit court reversed that decision and said this is some evidence, and you can go forward to a jury on that issue, but it is not dispositive of the requirement that someone be paid on a salary basis issue. I also did want to point out in Escribino, and this is footnote 2 in our reply brief. In that case, the parties agreed that the detectives there earned the same predetermined amount each pay period, and so you were thrust into analyzing whether or not one of these regulations that prohibited docking applied. Here, again, I think if you look at the cases like we've mentioned, the Kinney case, the Spradlin case, the Martin v. Malcolm Carney case, those all just say this isn't a salary. You don't even need to get to these rules. They're paid on an hourly basis, and I think that's kind of what the gist is of our argument. It is what the gist is of our argument. We don't need to go down this rabbit hole of saying were there any improper deductions because they haven't established in the first instance that they were paid on a salary basis, especially for the summary judgment purposes. What do you do with the pay records for Moreau that were cited to come down to exactly to the penny? Again, I agree with the Sixth Circuit that that is some evidence of payment on a salary basis, but it isn't dispositive at the summary judgment stage as a matter of law. And the reason Lieutenant Moreau was paid, received the same amount of pay, is because he had enough time in his comp time bank that he wasn't going to get docked. And, Judge, I don't quite know how else to establish this point. The corporate representative for the county testified under oath unequivocally. If they don't have enough time in their comp time bank, they're getting docked, right? Yes, for any reason, yes. That's true of everybody, from the county judge to the chief deputy to the sheriff, yes. There was nothing equivocal about it. It wasn't we endeavor to always pay them the same amount each week. And so if that admission doesn't establish this as a matter of law, that they weren't paid on a salary basis, and we're instead saying, well, the fact that they actually received the same amount each week does, I think that there's certainly a factual dispute on that particular point. And the cases, just so I can, the cases I mentioned earlier, the Spradling case, where there was an unwritten policy reduced leave time absences of less than a day, the Kinney case and the Martin case all stand for the proposition that we argue in this case. In terms of the, and the deposition testimony from the county represented was that 2655, 2651, 53, 60, 61, 62, 65, and there's a wealth of testimony on this particular issue. I also did want to point out, in the closest appellate court cases that I found to the question that you asked about the combination exemption in the primary duties are the Intracom Inc. versus Bajaj from the Fourth Circuit, Shockley versus City of Newport News, where they say employees whose primary duty is neither management nor administration may qualify for a combination exemption. The Judge Harmon case that I was thinking of is the King versus Stevenson Beer Company. And then he mentioned the Reyes versus Easy Pond. Those are 13 and 14 of our reply brief. The other, in terms of the preservation issue, Judge, I mean, it's in the record beginning at page 2894 and following. Those are the questions, the verdict forms we asked the court to submit. I re-urged that at the charge conference and said, please do this. We previously submitted these. The judge said no. And then last, I would point out just sort of as a kind of an equitable matter. In their three motions for summary judgment, they all relied exclusively on the administrative exemption. They never once urged the executive exemption. Then we get to trial and all of a sudden it's, oh, we want to rely on this other exemption that we didn't really plead or talk about during discovery. I've objected in the past to being ambushed like that, but they didn't. They're not coming to the court with clean hands. And lastly, I'll say, I can conceive of a situation, to your point, where someone can be simultaneously exempt. But it's the person who's the executive of the Human Resources Department. They're managing an administrative function. Here, Lieutenant Moreau and the others were in the field. Field work is not administrative work under any stretch of the imagination. And I see my time's up, so unless there are any questions. Yes, thank you, Mr. Pesce. Your case and all of today's cases are under submission. And the court is in recess until 9 o'clock tomorrow. Thank you, Judge. Thank you.